In re John R. MILLER, Elizabeth Ann Miller (Elizabeth Ann Lightcap–maiden name), Debtors.

Bankruptcy No. 79–02318T(7).

United States Bankruptcy Court, E. D. Pennsylvania.

Aug. 18, 1981.

Jeffrey L. Greenwald, Easton, Pa., for debtors.

David C. Schattenstein, Perkin, Rapoport & Schattenstein, Allentown, Pa., for William and Gloria Kiefer.

David F. Dunn, Allentown, Pa., for trustee.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

This case is before us on the debtors' application to withdraw an application for reaffirmation. The creditors with whom the debtors originally agreed to reaffirm object to the proposed withdrawal, and assert that the agreement is enforceable, notwithstanding the fact that this court has not approved the reaffirmation agreement. For reasons hereinafter given, we grant the debtors' application to withdraw.[1]

The facts of this case are as follows:

In September of 1978, the debtors entered into an agreement with William and Gloria Kiefer [hereinafter, the Kiefers], whereby the debtors agreed to purchase a parcel of real property from the Kiefers.[2] The purchase was financed in part by a loan from the First National Bank of Allentown, and in part by a loan from the Kiefers. To secure repayment of the loans, the debtors granted a mortgage to the Bank, and executed a judgment note in favor of the Kiefers. The judgment note contained a confession of judgment clause, which permitted the Kiefers to docket a judgment against the debtors, which the Kiefers did on November 20, 1978. The judgment was filed in the office of the Prothonotary of Northampton County, Pennsylvania, which created a lien on the debtors real property in that county. 42 Pa.Cons.Stat.Ann. § 4303 (Purdon). The transaction was closed in November of 1978, and the debtors went into possession of the premises.

In December of 1979, the debtors filed a joint voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code [11 U.S.C. §§ 101–1330 (1979); hereinafter, the Code]. Shortly after the first meeting of creditors, the debtors entered into separate reaffirmation agreements with both the Kiefers and the Bank. Prior to the regularly scheduled discharge hearing, the debtors filed an application to reaffirm, apparently seeking court approval of the agreement. The discharge hearing was held on May 28, 1980, whereupon the court conducted the statutorily mandated colloquy with the debtors.[3] The court informed the debtors

---

1. This opinion constitutes the findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The real property contained improvements in that a mobile home was on the parcel. The Kiefers do not contend that the mobile home is subject to their lien.

3. 11 U.S.C. § 524(d) (1979) provides:

(d) in a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, or 1328 of this title, the court shall hold a hearing at which the debtor shall appear in person. At such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the

debtor desires to make an agreement of the kind specified in subsection (c) of this section, then at such hearing the court shall—
(1) inform the debtor—
(A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and
(B) of the legal effect and consequences of—
(i) an agreement of the kind specified in subsection (c) of this section; and
(ii) a default under such an agreement;
(2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(4) of this subsection, if the consideration for such agreement is based in whole or in part on a consumer debt

that the reaffirmation agreements were not required under any provision of the Code. Apparently, the debtors had executed the agreements under the mistaken impression that the reaffirmation agreements were necessary in order for them to retain possession of the real property. The court did not rule on the issue of whether the agreements were in the best interests of the debtors, *see*, 11 U.S.C. § 524(c)(4) (1979), as the debtors indicated a desire to reconsider the reaffirmation agreements, whereupon the discharge hearing was continued.

On June 11, 1980, the debtors filed an application to amend their petition to include as exempt their interest in the real property.[4] On June 26, 1980, the debtors filed the instant application to withdraw the application to reaffirm with respect to the agreement with the Kiefers. The Kiefers opposed the application to withdraw at the continued discharge hearing on July 24, 1980.

11 U.S.C. § 524(c) (1979)[5] deals with the enforceability of reaffirmation agreements. The section lists one conditional and three absolute requirements for a reaffirmation agreement to be enforceable. First, the

agreement must be made prior to the granting of the discharge; second, the court must have conducted the "discharge colloquy" as required by Section 524(d); third, in cases concerning an individual, if the debt upon which the reaffirmation is based is a consumer debt not secured by real property, the court has inquired into the effect and purpose of the reaffirmation, and approved the agreement;[6] and finally, the debtor must not have rescinded the agreement within 30 days after the agreement becomes enforceable.[7]

The Kiefers argue that their agreement with the debtors is one "secured by real property," and that therefore, no court approval is necessary for the enforcement of the agreement. Further, they argue that the agreement became enforceable upon its execution by debtors and the passage of thirty days from that date. The Kiefers' seem to believe that the original application to reaffirm was meaningless.

Without deciding the question of whether the lien obtained by docketing of a confessed judgment makes the underlying debt one "secured by real property," we conclude that the Kiefers' arguments are without

---

that is not secured by real property of the debtor.

**4.** Rule 110 of the Rules of Bankruptcy procedure allows for the amendment of a voluntary petition "as a matter of course at any time before the case is closed." We granted this application by order dated November 6, 1980.

The debtors have since sought to avoid the Kiefers' lien to the extent it impairs their claimed exemption pursuant to 11 U.S.C. § 522(f) (1979). That application and objections to it remain pending a hearing on the matter.

**5.** Section 524(c) of the Code provides:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;

(2) the debtor has not rescinded such agreement within 30 days after such agreement becomes enforceable;

(3) the provisions of subsection (d) of this section have been complied with; and

(4) in a case concerning an individual, to the extent that such debt is a consumer debt that is not secured by real property of the debtor, the court approves such agreement as—

(A)(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor; or

(B)(i) entered into in good faith; and

(ii) in settlement of litigation under section 523 of this title, or providing for redemption under section 722 of this title.

**6.** *See, In re Coots*, 4 B.R. 281, 2 C.B.C.2d 233, 6 BCA 429 (Bkrtcy.S.D.Ohio 1980).

**7.** A literal reading of the statute results in a non-sequitur. The statute premises enforceability of the agreement upon the debtor not having rescinded within 30 days of the date the agreement becomes enforceable. Thus, the effect of the document is predicated upon the occurrence, or non-occurrence, of an act which can only take place when the effect is known. Despite the confused wording of the statute, the intent of Section 524(c)(2) that the debtor have a thirty day reconsideration period remains clear.

merit. Those arguments fail to take into account the provisions of Section 524(c)(3). While it is true that the colloquy has been conducted in this case, we conclude that if it is from the last event which confers "preliminary" enforceability—here, the discharge colloquy—that the thirty day period begins to run. Whether or not court approval is necessary for "preliminary" enforceability, we fail to see how the provisions of Section 524(c)(3) can be overlooked. The debtors have reconsidered the agreement and have sought to rescind it within the thirty days beginning with the date of the discharge colloquy. We believe it clear that, under these circumstances, debtors need not comply with the terms of the agreement with the Kiefers.

The legislative history of Section 524(c) makes it clear that the provisions for the enforceability of reaffirmation agreements were not met with unanimous approval by those drafting the Code.[8] Indeed, the final draft of Section 524(c) is somewhat of a compromise, with strict judicial scrutiny of most agreements, and a fully informed debtor in all, a prerequisite to enforceability.[9]

The debtors are entitled to reconsider their reaffirmation agreements once all other prerequisites to enforceability have been met, and they have done so. For all the above reasons, the debtors application to withdraw is granted.

---

**8.** *See,* 124 Cong.Rec. S14743 (daily ed. Sept. 7, 1978) (remarks of Sen. Kennedy).

**9.** *See* 124 Cong.Rec. H11096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); 124 Cong. Rec. S27406 (daily ed. Oct. 6, 1978) (remarks of Sen. Wallop).