**In re George Roy JACKSON and Carolyn Sue Jackson, Debtors.**

**Bankruptcy No. 84–20417.**

United States Bankruptcy Court,
D. Kansas,
at Kansas City.

May 16, 1985.

John T. Flannagan, Olathe, Kan., for debtors.

Byron C. Loudon, Kansas City, Kan., for Bank of Greeley.

Lloyd C. Swartz, Topeka, Kan., trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for hearing on October 26, 1984, on the issues of confirmation of debtors' Chapter 13 plan and debtors' objections to proof of claims # 5, 6, and 7 of the Bank of Greeley. The debtors appeared in person and through counsel John T. Flannagan. The Bank of Greeley appeared through its attorney Byron C. Loudon. Lloyd Swartz, standing chapter 13 trustee, appeared pro se. The Court sustained debtors' objection to Claim # 5 and overruled debtors' objection to Claim # 7. The Court took debtors' objection to Claim # 6 under advisement and ruled that the plan could not be confirmed until the Court had ruled on that objection. Both parties have filed proposed findings of fact and conclusions of law, and the matter is ready for determination.

## FINDINGS OF FACT

Based on the statements of counsel, the pleadings, the proposed findings of fact and conclusions of law, and taking judicial notice of the file herein as well as the file in debtors' earlier petition under chapter 7 in Case No. 82–20409, the Court finds as follows:

1. That this Court has jurisdiction over the subject matter and the parties; and that venue is proper.

2. That debtors George and Carolyn Jackson, filed a Chapter 7 case, Case No. 82–20409, in this Court on May 6, 1982.

3. That their Chapter 7 schedules listed the value of their homestead at $80,000.00 and claimed it as exempt property. The debtors had purchased their farm from George Jackson's parents in 1971, financ-ing the purchase by the parents carrying the mortgage. In January 1975, the debtors paid off Mr. Jackson's parents by financing a first mortgage on the property with the Federal Land Bank.

4. After purchasing the farm, George Jackson began to finance his farming operation with the Bank of Greeley. He borrowed funds collateralized by machinery, equipment, livestock and crops, and he was the only one required to sign the notes.

5. In 1981, the Bank of Greeley advised Mr. Jackson that it would require additional collateral in the form of a second mortgage on his homestead. On May 15, 1981, he signed a new combined note and security agreement in favor of the Bank; Mrs. Jackson did not sign the note. The May 15, 1981 note was for $106,288.31, representing an existing $95,000.00 note, a $9,000.00 note and an $1800.00 cash advance.

6. That on June 3, 1981, Mrs. Jackson accompanied her husband to the Bank of Greeley where she signed the note and second mortgage on the homestead.

7. That the second mortgage held by the Bank of Greeley was limited to $40,-000.00 by its terms.

8. That when the debtors filed their Chapter 7 petition on May 6, 1982, they scheduled their debt to the Bank of Greeley at $124,500.00. Although the Bank held a second mortgage on the homestead and security interest in equipment, grain and livestock, it was undersecured.

9. That on June 25, 1982, the Bank filed proof of claim # 4 as a secured creditor in the amount of $125,428.59 based on debtors' promissory notes of May 15, 1981 and January 4, 1982, and secured by farm equipment, cattle, crops, and a mortgage on the debtors' homestead.

10. That the Chapter 7 Order for meeting of creditors fixing time for filing objections to discharge and complaints to determine dischargeability of certain debts scheduled October 16, 1982, as the last day for filing a complaint to determine dis-

chargeability of a particular debt pursuant to 11 U.S.C. § 523.

11. That on October 21, 1982, the Bank of Greeley filed unsecured claim # 13 for the sum of $48,536.00 based on the debtors' promissory note dated January 4, 1982.

12. That after obtaining leave of court, the Bank filed a Complaint to determine dischargeability of debt on October 22, 1982, adversary proceeding number 82–0266 in Case No. 82–20409. The complaint alleged violations of § 523(a)(2) by George Jackson in giving false financial statements as a predicate for loans from the Bank of Greeley and against George Jackson and Carolyn Jackson for causing injury to the Bank by disposing of secured property in violation of § 523(a)(6).

13. That on October 28, 1982, debtors were granted a discharge subject to the Court's future ruling on the complaint to determine dischargeability of debt. No reaffirmation agreement was presented to the Court for approval and the Court did not give the debtors any reaffirmation admonitions.

14. That on May 25, 1983, the adversary proceeding between the parties came before the Court on the complaint to determine dischargeability of debt and the debtors' objection to claim # 4. Counsel advised the Court that the objection to claim # 4 would be settled by a reaffirmation agreement between the parties and that the complaint to determine dischargeability of debt would be settled by entering a $15,000.00 nondischargeable judgment in favor of the Bank.

15. That on May 31, 1983, the Bank of Greeley filed amended unsecured claim # 14 for an amount of $36,373.41, amending claim # 13.

16. That on September 30, 1983, a journal entry on objection to claim # 4 was filed which recited the agreement of the parties put before the Court on May 25, 1983. A journal entry was filed that same day which granted a nondischargeable judgment of $15,000.00 to the Bank.

17. That the journal entry on objection to claim # 4, filed September 30, 1983, attempted to stipulate a reaffirmation between the debtors and the Bank of Greeley, stating in pertinent part as follows: "The debtors stipulated to a reaffirmation of their indebtedness with the Bank of Greeley in the principal amount of $46,000.00 and agreed that said sum should bear interest at the rate of 13% per annum for 18 months following the date of this hearing and that the pending foreclosure action shall be dismissed in the state court and shall not be re-filed for 18 months so long as debtors continue to make the agreed monthly interest payments to the Bank of Greeley in the amount of $650.00." The debtors have made no payments under the reaffirmation agreement.

18. That on April 15, 1983, the Bank of Greeley filed a mortgage foreclosure action in Linn County, Kansas, against the debtors to foreclose its $40,000.00 second mortgage on their homestead. Judgment was entered, and an order of sale issued on October 26, 1983, scheduling the sale for December 12, 1983. The sale was confirmed on January 5, 1984, with the Bank of Greeley as the certificate purchaser for a bid of $64,945.99. The first mortgage to the Federal Land Bank of Wichita in the amount of $32,522.64 was satisfied, leaving $32,423.35 to satisfy the debt due the Bank of Greeley. Thus, there was a deficiency of $13,576.65 plus interest due the Bank under the terms of the reaffirmation agreement referred to in the Court's journal entry of September 30, 1983.

19. That debtors filed a Chapter 13 petition herein on May 5, 1984.

20. That the Bank filed three proofs of claim in the Chapter 13 case. Claim # 5 for $3,556.00 was asserted as a nondischargeable judgment because of debtors' alleged destruction of the Bank's secured property. The Court sustained debtors' objection to proof of claim # 5 on October 26, 1984.

21. Proof of Claim # 7, for $15,130.23 plus interest was asserted as a nondischargeable debt resulting from the parties'

settlement of the adversary proceeding in the debtors' chapter 7 case. On October 26, 1984, the Court overruled the debtors' objection to proof of claim # 7.

22. That the Bank of Greeley filed proof of claim # 16 for $17,639.30 plus interest. The Bank asserts this claim to be a deficiency on the homestead foreclosure and contends this claim is nondischargeable because of an alleged reaffirmation agreement recited to the Court on May 15, 1983, and journalized of record September 30, 1983.

## ISSUE OF LAW

WHETHER THE STIPULATION OF THE PARTIES RECITED IN THE RECORD ON MAY 25, 1983, AND REFERENCED IN THE JOURNAL ENTRY OF SEPTEMBER 30, 1983, WAS AN EFFECTIVE REAFFIRMATION OF THE DEBT TO THE BANK OF GREELEY SO THAT THE BANK MAY FILE A PROOF OF CLAIM FOR THE DEFICIENCY.

## CONCLUSIONS OF LAW

Initially, the Court notes that the issue in this case, filed May 5, 1984, will be determined by the Bankruptcy Code in existence prior to the 1984 amendments.

Section 524 states in pertinent part as follows:

"(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole in or part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable non-bankruptcy law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made *before* the granting of the discharge under section 727, 1141, or 1328 of this title;

(2) the debtor has not rescinded such agreement within 30 days after such agreement becomes enforceable;

(3) the provisions of subsection (d) of this section have been compiled with; and

(4) in a case concerning an individual, to the extent that such debt is a consumer debt that is not secured by real property of the debtor, *the court approves such agreement* as—

(A)(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor; or

(B)(i) entered into in good faith; and

(ii) in settlement of litigation under section 523 of this title, or providing for redemption under section 722 of this title.

(d) In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, or 1328 of this title, the court shall hold a hearing at which the debtor shall appear in person. At such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section, then at such hearing the court shall

(1) inform the debtor—

(A) that such an agreement is not required under this title, under non-bankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and

(B) of the legal effect and consequences of—

(i) an agreement of the kind specified in subsection (c) of this section; and

(ii) a default under such an agreement;

(2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(4) of this subsection, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real

**302**

property of the debtor." (emphasis added)

In reaffirming a debt secured by real estate, § 524(c)(1), (2), and (3) must be complied with, which comprises the following elements: (1) the agreement must have been made before the granting of the discharge under § 727; (2) the debtors must not have rescinded the agreement within 30 days after the agreement becomes enforceable, and (3) the provisions of § 524(d) must have been complied with.

The Court finds that the reaffirmation agreement between the Bank of Greeley and these debtors did not comply with the provisions of § 524(c)(1). On May 25, 1983, the parties advised the Court that they would enter a reaffirmation agreement in settlement of the debtors' objection to claim #4 of the Bank. Since this agreement was entered seven months after the debtors' October 28, 1982 discharge, the agreement was clearly not made before the discharge was granted as required by § 524(c)(1).

 The Court further finds that this reaffirmation agreement did not comply with the provisions of § 524(d) which require that the Court advise the debtors that the agreement is not required and of the legal consequences of the agreement. Although the Court need not approve a reaffirmation agreement secured by real property, there is no waiver of the requirement that the Court administer the admonitions outlined in § 524(d). *Matter of Coots,* 4 B.R. 281, 283, 6 B.C.D. 429, 2 C.B.C.2d 233, CCH ¶ 67,568 (S.D.Ohio 1980). "The admonitions of § 524(d)(1) may not be waived, regardless of whether the debt is or is not secured by real property. All the comments, cases, articles, and authorities reviewed by this Court have so stated." *In re Roth,* 38 B.R. 531, 539, 10 C.B.C.2d 708 (Bankr.N.D.Ill.1984); *affirmed,* 43 B.R. 484, 12 C.B.C.2d 53 (N.D.Ill.1984).

On the date these debtors were discharged, the Court was not apprised of the existence of any debt sought to be reaffirmed, and accordingly, it did not give the reaffirmation admonitions.

The parties' efforts to stipulate a reaffirmation agreement were ineffective in light of the statutory language which requires admonitions by the Court and the entering of the agreement prior to discharge. The sanction for failure to comply with the requirements of § 524(c) and (d) is unenforceability of the reaffirmation agreement. *Roth,* 38 B.R. at 539.

IT IS THEREFORE, BY THE COURT, ORDERED That the debtors' objection to claim #6 of the Bank of Greeley be and the same is hereby sustained.