**In the Matter of James GENTILE, Debtor.**

**Tamara GENTILE, Plaintiff,**

**v.**

**James GENTILE, Defendant.**

**Bankruptcy No. 1–81–00993.**
**Adversary No. 1–81–227.**

United States Bankruptcy Court, S. D. Ohio, W. D.

Jan. 7, 1982.

John A. Garretson, Hamilton, Ohio, for plaintiff.

Richard Michaelson, Cincinnati, Ohio, for defendant.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

Defendant debtor filed a petition seeking Chapter 7 relief under the Bankruptcy Code. The present adversary proceeding is a claim by his former wife, plaintiff herein, that she is a creditor of defendant, and that defendant's failure to pay certain debts as provided in the Decree of Dissolution gives her grounds to assert that those debts which are listed in defendant's bankruptcy petition are non-dischargeable.

We note that the answer admits that plaintiff is a creditor of defendant, and no issue is made of her standing to contest dischargeability. Thus the question presented to us involves resolution of a question arising under 11 U.S.C. § 523(a)(5), whether the debts here in question were for "alimony to, maintenance for or support of [debtor's] spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement . . .". The matter came on for trial. The only evidence adduced was the testimony of the parties themselves, in addition to the underlying Decree of Dissolution, which incorporated the Separation Agreement.

The parties were married September 17, 1966. There were two children of the marriage, Jeff, now age 13, and Beth Ann, now age 9. Marital difficulties arose and the marriage was dissolved by Decree of Dissolution entered on November 24, 1978. That decree incorporated a Separation Agreement dated October 12, 1978. Article X was entitled Division of Property. It was there provided that the wife was to receive "as her own property" seven rooms of furniture. She was also to receive the real estate at 436 Cameron Place in Hamilton, Ohio, a residence which the parties then had recently acquired, subject to the existing mortgage. Husband, defendant here, was to pay all mortgage payments and household expenses "until this dissolution is final." It was further provided that if wife were to remarry or if the home were sold, husband would receive $4000.00. The agreement also provided that wife was to retain a 1973 Ford upon which husband was to make the mortgage payments, while husband was to keep the 1972 Volkswagen. The agreement then provided that husband was to pay all outstanding debts of the parties. It is noteworthy also that Article IX entitled Alimony, provided expressly that neither husband nor wife would be obligated to pay alimony. The agreement also makes provision as to the responsibility of husband to pay child support and other obligations in respect to the children. These obligations are recognized and accepted by defendant and are not here in dispute. Defendant husband filed bankruptcy on April 10, 1981.

At the time of the dissolution of the marriage in November, 1978, plaintiff was employed at Shillito's at a salary of $100.00 per week. At that time, defendant earned approximately $400.00 per week as a store manager at a Liberal supermarket.

Plaintiff was forced to sell the house in 1979 because of financial difficulties. She currently resides in a 3 bedroom house which she rents for $375.00 per month. On the sale of the house the husband received $2000.00 which he used to pay off plaintiff's car as well as other debts. He did not get the $4000.00 provided for by the agreement because not enough was realized on the

sale. Plaintiff received $1500.00 on the sale of the house by way of reimbursement for debts which she had paid, which should have been paid by defendant.

The specific debts here in issue are those listed in Schedules A–2 and A–3 in defendant's bankruptcy petition, specifically Beneficial Finance, $1549.61; Visa, $423.99; J.C. Penney, $387.79; Sears Roebuck and Company, $191.37; and Shillito's $147.74. The other two debts in those schedules, that to Ford Motor Credit Company, and Liberal Credit Union are not debts of the marriage.

We note that in the process of dissolution, defendant was not represented by counsel, while plaintiff was. Evidently the terms of the agreement were not negotiated in the usual sense, and defendant testified at the trial that he agreed to pay the debts because they were in the papers that he had to sign in order to get a dissolution of the marriage. It is also noted that until he filed bankruptcy, defendant was making payments on the debts here in question.

 One thing is very clear as we apply the law to the above facts. It is of no consequence that the agreement expressly provides that there is to be no payment of alimony by either party, for it is well understood that language of the agreement is not controlling. What is significant is the intention of the parties to be deduced from the agreement together with those surrounding circumstances which we are permitted to consider. We deem it to be without significance that defendant was not represented by counsel at the time of the dissolution. There is no suggestion in the record that his entering into the agreement was not a voluntary act.

 Here the pertinent facts are few and simple. At the time of the dissolution, plaintiff, who was assuming the responsibility of providing a home for the children of the marriage, was employed and earning $100.00 per week, clearly not enough to provide such a home, even when the amount of child support provided in the agreement, $70.00 per week total, is incorporated into her income. Relief by way of payment of debts, an obligation which defendant assumed in the dissolution agreement, must have been intended as a further contribution towards the sustenance of his now separated family. It is obligations of this sort which are comprehended within the word "alimony". *In re Diers*, 7 B.R. 18, 21; 2 C.B.C.2d 1330 (Bkrtcy., S.D.Ohio, 1980). We therefore find the issues in this case in favor of plaintiff. While there was testimony at the trial in regard to the present financial situation of the respective parties, we have disregarded this in reaching our conclusion, for whether alimony was intended at the time of the separation depends upon the facts as of that time. If the respective situations of the parties have changed any recognition of this fact or adjustment of their respective obligations are matters for the state domestic relations court.

The foregoing constitutes our findings of fact and conclusions of law.

Plaintiff shall present an entry within 10 days from the date of this decision.