In re Thomas E. ROTH and Sharon F. Roth, Debtors.

**MIDLOTHIAN STATE BANK, an Illinois banking corporation, Appellant,**

v.

**Thomas E. ROTH and Sharon F. Roth, Appellees.**

**No. 84 C 3612.**

United States District Court, N.D. Illinois, E.D.

Sept. 27, 1984.

---

August A. Pilati, Chicago, Ill., for appellant.

William G. McMenamin, Joliet, Ill., for appellees.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The Midlothian State Bank ("Creditor" or "Midlothian") has appealed to this Court[1] from an order entered in the Bankruptcy Court which granted Debtors', Thomas and Sharon Roth's ("Debtors"), request to declare a reaffirmation agreement unenforceable. For the reasons spelled out below, the Court affirms the order of the Bankruptcy Court, 38 B.R. 531.

### Facts

The following facts were stipulated before the Bankruptcy Court. The Debtors filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on December 18, 1980. In their schedules of assets and liabilities, they listed a $40,732.45 debt to Joliet Federal Savings and Loan Association, secured by a first mortgage on their home. They also listed a $16,156.58 debt to Midlothian State Bank, secured by a second mortgage on the Debtors' residence. The Debtors listed the market value of the residence as $60,000, and they claimed a homestead exemption of $4,000.

On January 12, 1981, in order to keep their home, the Debtors executed a reaffirmation agreement in favor of the Creditor, whereby the Debtors agreed to pay in full their debt to the Creditor, even though they had filed for bankruptcy under Chapter 7.

On March 12, 1981, a discharge hearing was held pursuant to 11 U.S.C. § 524 before Bankruptcy Judge Richard Merrick. Thomas E. Roth and the Roth's attorney, David R. Kozlowski, appeared but neither Sharon F. Roth nor a Creditor's representative appeared at the hearing. Judge Merrick was never told about the previously executed reaffirmation agreement. The Court entered an order of discharge on that date without first giving the Debtor the so-called "admonitions" required by 11 U.S.C. § 524(d)(1). The case was ultimately closed on April 15, 1981.

On January 20, 1983, the first mortgagee, Joliet Federal, filed a state court complaint for foreclosure of the Debtors' residence. Midlothian, a junior mortgagee, answered the complaint and filed its own counterclaim to foreclose its trust deed.

---

1. Jurisdiction lies in this Court under 28 U.S.C. § 1334(a).

The Debtors, through attorney Kozlowski, answered both complaints.

On May 27, 1983, the state court entered a judgment of foreclosure and sale, foreclosing the respective liens of Joliet Federal and Midlothian. The Debtors' residence was sold to Joliet Federal at a Sheriff's sale for $51,255.70. Midlothian did not bid at the sale. Being undersecured, Midlothian sought and obtained a $13,751.65 deficiency judgment in state court on August 1, 1983. On August 29, 1983, the Debtors, through their new counsel, filed a motion in the state court seeking to vacate the deficiency judgment. An identical motion was filed in the Bankruptcy Court on September 14, 1983, and the state court subsequently deferred to the Bankruptcy Court to decide the underlying determinative federal question. Both motions rested entirely on the Debtors' claim that the January 12, 1981 reaffirmation agreement was unenforceable under 11 U.S.C. § 524(c), (d), and thus their personal liability for the mortgage debt owed to Midlothian did not survive their discharge in bankruptcy.

On March 27, 1984, Bankruptcy Judge Richard N. DeGunther declared the reaffirmation agreement unenforceable, the debt owed by Debtors to Midlothian Bank to be discharged in bankruptcy and the state court deficiency judgment void. Midlothian now appeals.

*Opinion*

The primary issue on appeal is whether Judge Merrick's failure on March 12, 1981, to give the Debtors the admonitions required by 11 U.S.C. § 524(d)(1) renders the reaffirmation agreement unenforceable. Judge DeGunther held that the agreement was unenforceable, and we agree.

■ At the outset, we note that in reviewing bankruptcy orders, this Court is required to evaluate factual questions under the "clearly erroneous" standard but is to review questions of law independently. *See In re Evanston Motor Co.*, 735 F.2d 1029, 1031 (7th Cir.1984); *In re Tarnow*, 35 B.R. 1014, 1015 (N.D.Ind.1983). This case presents only legal questions, and so the Court has an independent scope of review. With this standard in mind, we address the issues on appeal.

■ The role of the Bankruptcy Court in approaching reaffirmation agreements is detailed in 11 U.S.C. §§ 524(c), (d), which are set forth in the margin.[2] Section 524(c)

---

2. Section 524(c)—

An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy·law, whether or not discharge of such debt is waived, only if—

(1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;

(2) the debtor has not rescinded such agreement within 30 days after such agreement becomes enforceable;

(3) the provisions of subsection (d) of this section have been complied with; and

(4) in a case concerning an individual, to the extent that such debt is a consumer debt that is not secured by real property of the debtor, the court approves such agreement as—

(A)(i) not imposing any undue hardship on the debtor or a dependent of the debtor; and

(ii) in the best interest of the debtor; or

(B)(i) entered into in good faith; and

(ii) in settlement of litigation under section 523 of this title, or providing for redemption under section 722 of this title.

Section 524(d)—

In a case concerning an individual, when the court has determined whether to grant or not to grant a discharge under section 727, 1141, or 1328 of this title, the court shall hold a hearing at which the debtor shall appear in person. At such hearing, the court shall inform the debtor that a discharge has been granted or the reason why a discharge has not been granted. If a discharge has been granted and if the debtor desires to make an agreement of the kind specified in subsection (c) of this section, then at such hearing the court shall—

(1) inform the debtor—

(A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and

(B) of the legal effect and consequences of—

(i) an agreement of the kind specified in subsection (c) of this section; and

spells out four prerequisites to the validity of a reaffirmation agreement, of which the third is the most relevant to the present issue. A reaffirmation agreement is "enforceable ... *only if* ... (3) the provision of [§ 524(d) ] have been complied with." 29 U.S.C. § 524(c)(3) (emphasis added). Section 524(d)(1) requires the Bankruptcy Court at a discharge hearing to give the debtor what amounts to a short lecture on reaffirmation agreements. The Court is to make sure that the debtor understands that he or she does not have to enter into a reaffirmation agreement, and that he or she understands the legal consequences of such an agreement. The parties agree that Thomas Roth was never "admonished" under § 524(d)(1) at the March 12, 1981 discharge hearing, because neither Roth's attorney (who was present) nor Midlothian (who was not) apprised the Court of the reaffirmation agreement. The parties also agree that, in general, admonitions must be given for a reaffirmation agreement to be enforceable. Indeed, the statute is plain on that score. The Creditor, however, argues that the Debtors bore the burden of presenting the reaffirmation agreement to the Bankruptcy Court at the discharge hearing, and that they in effect waived their "right" to admonitions by not bringing the agreement to the Court's attention.

The plain language of the § 524(d)(1) admonitions is absolute, mandating that a reaffirmation agreement is enforceable "*only if*" the requirements of §§ 524(c) and (d) are satisfied. Moreover, the creditor has not pointed to any legislative history or case law supporting its argument that this admonitions prerequisite can be waived. To the contrary, the legislative history of the statute is consistent with the Bankruptcy Court's conclusion that the failure to admonish the Debtors rendered their reaffirmation agreement unenforceable.

Judge DeGunther ably summarized the Congressional history in his memorandum opinion. Congress revised the Bankruptcy Code in 1978 to respond to serious abuses by creditors concerning reaffirmation agreements. Congress sought to protect unsophisticated debtors from wily creditors, who sometimes had pressured the debtors to sign reaffirmation agreements, a process which defeated the purposes of the "fresh start" policies of the Bankruptcy laws. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess., at 163 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Early drafts of the Bankruptcy Code revisions would have outlawed all reaffirmation agreements. *See* H.R. 8200, 95th Cong., 1st Sess., § 524(b) (1977), *reprinted in* 12 Resnick and Wypyski, *Bankruptcy Reform Act of 1978: A Legislative History* (1979); S 2266, 95th Cong., 1st Sess., § 524(b) (1977), *reprinted in* Resnick and Wypyski at vol. 14.

The final draft of § 524 reflected "a compromise between the faction which did not wish to permit any reaffirmations and those who would have allowed limited reaffirmation." *In re Farmer*, 13 B.R. 319, 320 (Bankr.M.D.Fla.1981).[3] In reporting to the House on the compromised final drafts, Representative Edwards stated about § 524(d)(1): "If the debtor is an individual the court *must* advise the debtor of various effects of reaffirmation at a hearing." 124 Cong.Rec. 32399 (1978) (emphasis added). The compromise did allow for some reaffirmation agreements but made the Bankruptcy Court an integral part of the reaffirmation process. In cases where an individual seeks to reaffirm "a consumer debt that is secured by real property of the debtor," the Bankruptcy Court must actually approve the agreement under the demanding standards of § 524(c)(4) in order for it to be

(ii) a default under such an agreement;
(2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(4) of this subsection, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor.

**3.** The debate appears to have been heated, with Senators Kennedy and DeConcini strongly supporting a total ban on reaffirmation and Senators Hatch, Bartlett and Thurmond arguing for reaffirmations with a thirty-day "cooling-off" period. *See* 124 Cong.Rec. 28261–3, 28282 (1978).

enforceable. In cases like this one where the consumer debt is secured by real property, although the Court does not have the power to disapprove the reaffirmation, it must nevertheless admonish the debtor under § 524(d)(1). In both types of cases, then, the statutory compromise demands some amount of court involvement with reaffirmation agreements *before* a discharge is finally ordered, reflecting the basic Congressional distrust of reaffirmations. In light of this Congressional wariness and of the careful compromise, we agree with the Bankruptcy Court that the provisions of § 524(c) must be construed narrowly to favor court involvement with reaffirmation agreements and to protect debtors. Accordingly, we hold that Judge Merrick's failure to admonish the Debtors at the March 12, 1981 discharge hearing renders the reaffirmation agreement unenforceable, despite the Debtors' neglect to bring the agreement to the Judge's attention. The plain language of the statute requires such admonitions, it contains no explicit exceptions, and the legislative history does not warrant reading a general waiver exception into the statute.[4]

Although the precise issue of waiver is one of first impression, we agree with Judge DeGunther that this holding is in harmony with analogous bankruptcy decisions, as well as legislative history. In

general, Bankruptcy Courts adhere strictly to the other prerequisites of § 524(c). For example, a reaffirmation has been held unenforceable where it was executed *after* the discharge in bankruptcy and thus failed to comply literally with § 524(c)(1). *Winters National Bank and Trust Co. v. Coots*, 4 B.R. 281 (Bankr.S.D.Ohio 1980). *Coots'* holding reinforces the importance of court involvement with reaffirmations before a discharge is granted. Similarly, the thirty-day recission period of § 524(c)(2) has been construed narrowly to protect debtors, as it begins to run only after a discharge hearing where admonitions have been given, not from the date the reaffirmation has been executed. *In re Clements*, 18 B.R. 435, 437 (Bankr.N.D.Ala. 1982); *In re Miller*, 13 B.R. 697, 700 (Bankr.E.D.Pa.1981).[5] Implicit in both *Miller* and *Clements* is that a reaffirmation can be enforceable only after admonitions have been given. Both courts recognized that admonitions are crucial to the process of ensuring that debtors reaffirm a dischargeable debt willingly and with eyes open:

> [W]e fail to see how the provisions of Section 524(c)(3) can be overlooked.... [T]he final draft [makes] ... strict judicial scrutiny of most agreements, and a fully-informed debtor in all, a prerequisite to enforceability.

4. We are aware that our holding creates a potential loophole. Conceivably, a devious debtor might deliberately hide a reaffirmation agreement from the Court at a discharge hearing. The debtor would then enjoy an extension of credit without any risk of personal liability because he could later declare the reaffirmation unenforceable. To prevent a mischevious debtor from intentionally exploiting this loophole, it might be proper to read a "bad faith exception" into our holding, one related to an estoppel. But even if such an exception should properly exist, it would not apply to this case. There is no evidence that the debtors deliberately withheld information from Judge Merrick with an intent to prejudice the Creditor, nor is there other evidence of bad faith. We disagree with the Creditor that because of their failure to tell Judge Merrick of the reaffirmation, the Debtors should now be estopped from arguing that the agreement is unenforceable. While the Debtors should have brought the agreement to the Court's attention, we believe the Creditor shares

the responsibility for Judge Merrick's ignorance. The Creditor received formal notice of the discharge hearing. It of course knew of the reaffirmation and could have protected its interests under the agreement by appearing at the hearing and ensuring that it was shown to the Judge. The cases cited by the Creditor are inapposite, as they concern estoppel or recission in the context of *already enforceable* agreements.

5. *But cf. In re Artis*, 27 B.R. 863 (Bankr.E.D.N.Y. 1983) (refusing to allow debtors to exercise 30-day recission right where debtors had been admonished, court had approved reaffirmation agreement, and debtors wanted to rescind only because their car—the source of the debt—had been stolen). *Artis* does not pertain to the present case and is distinguishable from *Miller* and *Clements*, because the court there had formally admonished the debtors and approved of the reaffirmation, so that it was otherwise enforceable.

*Miller,* 13 B.R. at 700; *see also Clements,* 18 B.R. at 437 (following *Miller*). In sum, we agree with Judge DeGunther that *"Miller* and *Clements* [add] support for the view that Section 524(c)(3) was not just excess verbiage and was indeed intended by Congress as a means of protecting debtors by giving them one last chance to be educated as to their rights before entering into an enforceable reaffirmation agreement and leaving the bankruptcy forum." Memorandum Opinion at 16.

The opinion and order of the Bankruptcy Court is affirmed.[6]  It is so ordered.

---

**6.** Judge DeGunther also based his order on an alternative holding that the reaffirmation was unenforceable because it was not approved by Judge Merrick, despite the seemingly clear language of § 524(c)(4) which seems to exempt debts secured by real estate from needing court approval.  In light of our holding, we need not address this alternative holding, and our opinion should not be construed as affirming that part of Judge DeGunther's opinion.