In re Gregory AURRE, Jr., Debtor.

Gregory AURRE, Jr., Plaintiff,

v.

Kathryn Ruth KALAIGAN, formerly known as Kathryn Aurre, Defendant.

Bankruptcy No. 81 B 10736.
Adv. No. 85–6516A.

United States Bankruptcy Court, S.D. New York.

May 5, 1986.

---

Harvis & Zeichner by Abraham Backenroth, New York City, for plaintiff.

Sylvor, Schneer, Gold & Morelli by Richard C. Gold, New York City, for defendant.

## DECISION AND ORDER

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

The defendant seeks an order granting summary judgment pursuant to Rule 7056 of the Rules of Bankruptcy Procedure (1983), which incorporates Rule 56 of the Federal Rules of Civil Procedure ("F.R.C. P.") (1983). She further requests that sanctions be imposed against the plaintiff and his attorneys pursuant to Rule 9011 of the Bankruptcy Rules. Alternatively she demands that security for costs be posted pursuant to Local Rule 39 of the Civil Rules of the United States District Court for the Southern District of New York. Upon a motion for summary judgment, the issue is whether there is a genuine issue of material fact requiring trial. *E.g., Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317 (2d Cir.1975). *In re Euro-Swiss Int'l Corp.*, 33 B.R. 872 (Bankr.S.D.N.Y.1983). Here there is no such issue. The plaintiff's cause of action is barred by *res judicata*. As also discussed below, the motion for sanctions is to be denied. Accordingly, the request for security for costs is moot.

### I.

The following facts are undisputed.[1] Plaintiff and defendant were formerly mar-

---

**1.** Not all the facts as to which there is no genuine dispute are recited herein. Only those relevant to the *res judicata* and sanctions issues are set forth since they are dispositive. Plaintiff seeks summary judgment on other grounds, including that the Separation Agreement is dispositive. We need not address all those facts in

ried. They entered into a separation agreement (the "Separation Agreement") on November 11, 1974 and were subsequently divorced. The Separation Agreement obligated the plaintiff to make certain payments to defendant.

Plaintiff filed a petition seeking an order for relief pursuant to § 301 of the Bankruptcy Code, 11 U.S.C. § 301 (1984) (the "Code") on April 7, 1981. He obtained a discharge pursuant to § 524 of the Code on September 22, 1981. When he filed his petition, plaintiff was in arrears in making payments under the Separation Agreement. During the bankruptcy proceeding, plaintiff's former counsel and counsel to defendant entered into a letter agreement dated June 18, 1981. It provided that plaintiff would withdraw his assertion that the debt to defendant attributable to alimony and support is dischargeable.

After plaintiff received his discharge, the parties resorted to the type of litigation unfortunately so typical of heated matrimonial proceedings. The defendant brought on a motion in the divorce proceeding before the Supreme Court of the State of New York, County of New York seeking payment of sums owed pursuant to the Separation Agreement. Plaintiff defaulted and judgment was entered. His motion to vacate the default was granted on May 5, 1982 and two questions were referred to a referee: (i) the amount of arrears due and (ii) whether the change in plaintiff's financial condition warranted downward modification of the sum he owed defendant pursuant to the Separation Agreement. After plaintiff's direct testimony was taken before the referee, he again defaulted. His motion to vacate that default was denied by order of March 10, 1983 and judgment was entered on April 26, 1983 in the sum of $55,622.52. Plaintiff's motion for reargument was denied by order entered July 14, 1983. By order, defendant's attorneys were granted judgment in the sum of $5,000. The judgment and order were affirmed by the Appellate Division, First De-

partment on January 3, 1985 (Defendant's Exhibit H).

In the interim, plaintiff had moved to Commonwealth of Kentucky. Defendant and her attorney thereupon brought an enforcement proceeding. The Muhlenberg Circuit Court granted summary judgment in their favor, holding that the New York judgments were entitled to full faith and credit. It was further held that plaintiff's counterclaims, based on two promissory notes apparently signed by defendant in January 1975 and made payable to plaintiff, were plead in and part of the New York proceedings and could not be asserted. On October 18, 1985, the Kentucky Court of Appeals affirmed (*Id.*, Exhibit J).

While that appeal was pending, plaintiff obtained an order of this Court reopening the bankruptcy petition. Shortly thereafter a minor child residing with plaintiff brought a motion to intervene in the New York divorce proceeding. The motion was denied in an order of the state court filed October 7, 1975 (*Id.*, Exhibits K and L).

In his complaint in the instant proceeding before this Court, plaintiff alleges that the judgment in favor of defendant obtained in the New York Supreme Court concerns a pre-petition debt which is dischargeable on the ground that the Separation Agreement "was in the character of a property settlement rather than one of support" (¶ 11(a)). It is further asserted that payment of debt was not reasonably necessary for the support and maintenance prior to filing the bankruptcy petition or at discharge, that subsequent changes have occurred in the relative financial circumstances of the parties, that defendant's new husband has assumed responsibility for support of the children of the former marriage and that "defendant's financial condition was much greater than plaintiff's prior to the filing of the petition." (¶ 11(c)(iii)). While it is also alleged that plaintiff is entitled to a set-off on the basis of $34,000 owed pursuant to the two promissory notes, the sole relief demanded is that judgment be entered declaring the pre-petition debt discharged.

view of the dispositive nature of the *res judicata* issue.

In opposition to the motion for summary judgment, plaintiff submitted an affidavit stating that the Separation Agreement contained "a silent provision" whereby defendant transferred considerable property to him. He also asserts that the June 18, 1981 letter agreement of counsel was agreed to by his attorney "unbeknownst to me" and constituted a reaffirmation agreement. It is undisputed on this motion that, if the letter constituted a reaffirmation agreement, it was not presented to the Court and the admonitions required by § 524(d)(1) of the Code were not given by the former bankruptcy judge to whom this case was assigned.

Plaintiff thereupon asserts that he and defendant thereafter proceeded "on the assumption" that the Separation Agreement was enforceable and for that reason he failed to raise, before the New York Supreme Court, the issue of whether the debt owed defendant was actually the nature of alimony, maintenance or support.

## II.

Section 523(a)(5) of the Code generally provides an exception to discharge of unassigned debts owed to a spouse, former spouse or child of the debtor that are "actually in the nature of alimony, maintenance or support" and that arise "in connection with a separation agreement...." Unlike debts arising out of fraud, obtaining property through false pretenses and willful and malicious injury, as set forth in §§ 523(a)(2), (a)(4) and (a)(6), no action by the bankruptcy court is necessary to trigger the exception. See § 523(c).[2] The bankruptcy courts and state courts thus have concurrent jurisdiction to determine whether a debt is excepted from discharge under § 523(a)(5). Aldrich v. Imbrano (In re Aldrich), 9 C.B.C. 2d 1073, 1078, 34 B.R. 776 (B.A.P. 9th Cir.1983). Cf. L. King, R. Babbitt, A. Herzog, R. Levin, 3 Collier on Bankruptcy, ¶ 523.06 (15th Ed.1985). Although the test of whether an obligation to a former spouse is one of federal law, e.g., Boyle v. Donovan, 724 F.2d 681 (8th Cir. 1984); Pauley v. Spong (In re Spong), 661 F.2d 6 (2d Cir.1981), "[s]tate courts of general jurisdiction have the power to decide cases involving federal ... rights where ... neither the Constitution nor statute withdraws such jurisdiction." Boston Stock Exchange v. State Tax Commission, 429 U.S. 318, 319, n. 3, 97 S.Ct. 599, 602, n. 3, 50 L.Ed.2d 514 (1977); accord e.g., Texaco Inc. v. Pennzoil Co., 784 F.2d 1133, 1144 (2d Cir.1986).

In the application of that test, the labels affixed to an obligation by state law or by a divorce decree or separation agreement are not at all binding. Stout v. Prussell, 691 F.2d 859 (9th Cir.1982); Melichar v. Ost, 661 F.2d 300 (4th Cir.1981); In re Bell, 47 B.R. 284 (Bankr.E.D.N.Y.1985); In re Migliarese, 38 B.R. 978 (Bankr.E.D.N.Y. 1984). In rendering the divorce decree, the state court does not have before it the federal issue. Nor does it in enforcing a separation agreement or divorce decree prior to bankruptcy. Thus, res judicata and collateral estoppel issues only arise from post bankruptcy actions to enforce a prepetition debt. If they actually concern alimony, maintenance or support, the debtor's discharge, as § 523(a)(5) provides is no bar; nor is the automatic stay a bar to actions during the pendency of the bankruptcy case to the extent recovery is sought against property that is not property of the estate. § 362(b)(2).

Thus, it has been held that a judgment entered in post-bankruptcy state court proceeding precludes, under the doctrine of res judicata, relitigation in the bankruptcy court of whether a debt owed to a spouse or former spouse was actually in the nature of alimony, maintenance or support as

---

**2.** Section 523(c) provides, with respect to scheduled debts, "the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph 2, 4, or 6, as the case may be, of subsection (a) of this section." A complaint seeking such relief is to be filed within the time prescribed by Rule 4007.

required by § 523(a)(5). *In re Mattern,* 33 B.R. 566 (Bankr.S.D.Ala.1983); *In re Peterman,* 5 B.R. 687 (Bankr.E.D.Pa.1980); *Cf. Goss v. Goss,* 722 F.2d 599, 604 (10th Cir. 1983) (applying collateral estoppel). In applying *res judicata* to post-bankruptcy judgments, those decisions are consistent with the leading case of *Fidelity & Casualty & Co. v. Golombosky,* 133 Conn. 317, 322–34, 50 A.2d 817, 819–20 (1946). There the court refused to apply *res judicata* to pre-bankruptcy judgments in determining the dischargeability of the debts thereby reflected.

Whether those holdings are determinative is, however, arguable. *Res judicata,* or claim preclusion, "prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was raised." *Murphy v. Gallagher,* 761 F.2d 878, 879 (2d Cir.1985) (citations omitted). To apply it to a state court judgment in which a federal issue could have been raised, bars federal consideration of the issue. Thus, on the basis of its interpretation of *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), which the *Mattern* and *Peterman* courts did not consider, the court in *In re Helm,* 48 B.R. 215 (Bankr.W.D.Ky.1985), addressing a factual situation comparable to that in *Mattern* and *Peterman* and at issue here, reached a different conclusion. There, the debtor, one year before filing a bankruptcy petition, had unsuccessfully moved to set aside a separation agreement. After he filed his bankruptcy petition, his former wife sought, in the state court, an order of contempt and he cross-moved for a stay of discovery citing his petition. The state court denied the cross-motion and held the parties to the terms of the separation agreement. One month later, the debtor filed a complaint in the bankruptcy court seeking a determination of dischargeability under § 523(a)(5). In refusing to apply *res judicata* and collateral estoppel, the court read *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), to express a congressional intent that all dischargeability actions be heard by the bankruptcy courts. It therefore ruled that to apply *res judicata* to consider dischargeability issues previously tried in state courts could thwart that intent. 48 B.R. at 219.

The source of this confusion lies in the way that *Brown v. Felsen* was written rather than in its holding. There, the Court held that a state court judgment rendered pursuant to stipulation prior to bankruptcy did not bar, under the doctrine of *res judicata,* inquiry of the underlying facts in an action before the bankruptcy court to declare the debt non-dischargeable on grounds of fraud. In so holding, the Court noted that the defense of dischargeability was new, is irrelevant to the ordinary pre-bankruptcy state court proceeding, and raises issues not identical to those arising under state law. Thus, to apply *res judicata* would force a creditor to try dischargeability issues "to protect himself against the mere possibility that a debtor might take bankruptcy in the future." 442 U.S. at 133–35, 99 S.Ct. at 2210–11. It further observed that in 1970, Congress amended § 17 of the former Bankruptcy Act, to take fraud based debts and debts for willful and malicious injury from the state courts and commit them to the bankruptcy courts. 442 U.S. at 135, 99 S.Ct. at 2211. This amendment is contained in § 523(c) of the Code. The Court reasoned that "it would be inconsistent with the philosophy of the 1970 amendments to adopt a policy of *res judicata* which takes these § 17 questions away from bankruptcy courts and forces them back into state courts." 442 U.S. at 136, 99 S.Ct. at 2212.[3]

---

**3.** In this respect, *Brown v. Felsen* is consistent with *Andrea Theatres, Inc. v. Theatre Confections, Inc.,* 787 F.2d 59, 62 (2d Cir.1986) and *Lyons v. Westinghouse Electric Corp.,* 222 F.2d 184, 189 (2d Cir.1955). As there set forth, a state court has jurisdiction to determine federal antitrust claims raised as defenses in a state court action including claims lying within the exclusive jurisdiction of the federal courts. Those cases hold, however, that the state court resolution of those defenses does not preclude resolution of the federal claims within the exclusive jurisdiction of the federal courts in a subsequent federal suit seeking affirmative re-

Were that all the Court said, one would unhesitantly distinguish post-bankruptcy state court proceedings concerning dischargeability issues over which the bankruptcy courts and state courts have concurrent jurisdiction. The hesitancy arises from the Court's phrasing of the issue in terms of all § 17 dischargeability matters. 442 U.S. at 127–28, 99 S.Ct. 2207–08. Those matters included the exception to discharge now contained in § 523(a)(5) and which is of interest here. The hesitancy further arises from the Court's statement that "[i]f a state court should expressly rule on § 17 questions, then giving finality to those rulings would undercut Congress' intention to commit § 17 issues to the jurisdiction of the bankruptcy courts," 442 U.S. at 135, 99 S.Ct. at 2211, and its quotation of legislative history to the 1970 amendments to the effect that dischargeability issues are unfamiliar to the state courts and that they lack the expertise to handle them. 442 U.S. at 136 n. 7, 99 S.Ct. at 2211–12 n. 7.

Nevertheless, we strongly doubt that these broad statements indicate an intention to bar application of res judicata to post-bankruptcy state court proceedings where the state courts have concurrent jurisdiction to resolve dischargeability issues. The state courts, after the passage of the 1970 amendments, have considered and ruled on such matters. E.g., Abrams v. Burg, 367 Mass. 617, 327 N.E.2d 745 (1975). Moreover, that the federal courts are to give full faith and credit to state court judgments to the same extent as given by the state courts is required by 28 U.S.C. § 1738(1948), a statute consistently in effect since the formative days of this republic. Kremer v. Chemical Construction Corp., 456 U.S. 461, 463, 102 S.Ct. 1883, 1887–88, 72 L.Ed.2d 262 (1982). In

construing that statute together with § 523, id., it appears that Congress, in enacting § 523(c), only intended to divest state courts of fraud based and willful and malicious injury cases and thus permit res judicata to apply to post bankruptcy state court proceedings.

In addition, subsequent decisions of the Supreme Court, e.g., Kremer and Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), indicate that the Court intends exceptions to res judicata to be narrowly construed, and principally limited, except in cases like that actually before the Court in Brown v. Felsen, where Congress withdrew state court jurisdiction, to cases where there was not a full opportunity to be heard. As the Court observed in Moitie:

"Simple justice" is achieved when a complex body of law developed over a period of years is evenhandedly applied. The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata." Heiser v. Woodruff, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946).

452 U.S. at 401, 101 S.Ct. at 2429.

Nothing in Haring v. Prosise, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), or in Texaco, detracts from the policy favoring application of res judicata here. In Haring, the plaintiff, after pleading guilty in a state court criminal action, brought suit under 42 U.S.C. § 1983 (1979) seeking redress for an unconstitutional search. The Court, inter alia, held that the judgment of conviction on the guilty plea did not waive a possible 42 U.S.C. § 1983

---

lief. The distinction lies in the nature of the jurisdiction of the federal courts and whether Congress intended, in granting exclusive jurisdiction, to partially repeal 28 U.S.C. § 1738. See Marrese v. American Academy of Orthopedic Surgeons, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Andrea Theatres follows Lyons which proceeds on the notion that, if Congress granted jurisdiction exclusively to fed-

eral courts, it did not intend to bar its exercise by "prejudgment elsewhere." Lyons, 222 F.2d at 189. That concept has since been greatly diluted in cases not involving antitrust claims. See Murphy v. Gallagher, 761 F.2d at 895 (state court judgment precludes relitigation of issues, even though effect is to preclude a securities law claim within the exclusive jurisdiction of the federal courts).

claim, and therefore the suit was not barred by *res judicata*. In *Texaco*, the court, *inter alia*, held that although a defendant against whom judgment had been entered in a state court proceeding had failed to present to the state court its claim of constitutional deprivation of property by the state law provision requirement of a supersedeas bond in full amount of the judgment, it was not barred from bringing that claim pursuant to 42 U.S.C. § 1983. Key to the court's holding was its finding that the federal suit was not a collateral attack on the state court judgment. 784 F.2d at 1144. Thus, unlike this case which does collaterally attack a state court judgment, that holding by the *Texaco* court does not raise the federalism concerns sought to be put to rest by 28 U.S.C. § 1738.

■ It cannot be gainsaid that the policy of having the bankruptcy courts rule exclusively on all dischargeability issues is highly desirable, as the Court noted in *Brown v. Felsen*. Congress should amend § 523(c) to so provide. Until it does so, however, we are constrained from disregarding the concurrent jurisdiction of the state courts. The lower federal courts do not sit as courts of appeal even with respect to federal claims over state courts that have concurrent jurisdiction. *Texaco*, 784 F.2d at 1142–3. To look behind pre-petition state court judgments and decrees in order to determine dischargeability does not put the bankruptcy courts in that position. Such an issue was not ripe before the state courts. Not to enforce post-petition judgments of state courts having concurrent jurisdiction, however, does put us in that position. If a state trial court affords a full opportunity to be heard and fails to enforce the federal statutory right set forth in § 523(a) upon the issue being preserved before it, redress is to be had on appeal within the state court system. *Ibid.*

### III.

■ Having concluded that *res judicata* may apply here, we now turn to the application of that doctrine. As to the opportu-

nity to raise the issue of whether the debt owed defendant was discharged in whole or in part, § 3018(b) of the New York Civil Practice Law and Rules (McKinney 1974) expressly lists discharge in bankruptcy as an affirmative defense. Thus, there was a full opportunity for plaintiff to have raised the discharge of his debt to defendant. Indeed, his papers submitted on the motion to vacate his default discuss the bankruptcy proceeding. Consequently, the resolution of that defense is merged in the judgment.

None of this is disputed by plaintiff. Rather, he urges that he mistakenly failed to raise the defense of discharge in reliance on the letter agreement of June 18, 1981, which he styles as a reaffirmation agreement. Relying exclusively on *In re Roth*, 43 B.R. 484 (N.D.Ill.1984), he asserts that he did not receive the warnings required by § 524(d)(1) of the Code and that therefore *res judicata* may not be applied since the judgment was void. These arguments are without merit.

First, the agreement of June 18, 1981, is mischaracterized as a "reaffirmation agreement." The Code does not employ the term "reaffirmation agreement". The type of agreement requiring the warnings contained in § 524(d)(1) is defined in § 524(c) as "[a]n agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title." § 524(c). The June 18, 1981 letter merely stated that plaintiff "withdraws his claim that the debt attributable to alimony and support to [defendant] is dischargeable." There was no new agreement based on a dischargeable debt. Rather, the allegation that alimony and support obligations were dischargeable, which they generally are not, was merely withdrawn.

In *Roth*, moreover, there was no issue regarding the failure to raise the defense of discharge in the state court. There that defense was raised simultaneously in the state court and in the bankruptcy court. The state court deferred to the bankruptcy

court for its resolution. 43 B.R. at 486. Here, plaintiff made no request for deferral and *Roth* says nothing regarding the application of *res judicata.*

Furthermore, plaintiff's basic claim that he mistakenly failed to raise the discharge issue under § 523(a)(5) into the state court is no ground for disturbing the state court judgment and excusing him from having utilized the state courts to vacate or modify a state court judgment on that ground. No contention is made that the judgment was not valid; indeed the requirements for a valid judgment, *i.e.,* adequate notice, opportunity to be heard and personal and subject matter jurisdiction, are clearly present. *Restatement (Second) Judgments* § 1 (1982). Nor is any contention made that a default judgment entered on failing to appear for continuation of trial is not entitled to *res judicata;* indeed such judgments are so entitled. *Cf. Hatch v. Morosco Holding Co., Inc.,* 19 F.2d 766 (2d Cir.1927). Broader than collateral estoppel's requirement that the issue sought to be precluded have actually been litigated at trial and determined on the merits, *Murphy,* 761 F.2d at 879, the doctrine of *res judicata* merges all claims and defenses in the judgment and the "defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action." *Restatement (Second) Judgments* § 18(2). To be sure, 28 U.S.C. § 1738 contemplates only that the federal courts give the same preclusive effects to state court judgments that would be given in the state where rendered. But under New York law "if the defendant neglects to set up [a] defense, he is concluded as to the existance thereof by the judgment rendered in the action." 9 Carmody Wait 2d 63:208 (1966); *accord Gray v. Bankers Trust Co.,* 82 A.D.2d 168, 442 N.Y.S.2d 610 (3d Dept.1981).[4]

Having had a full and fair opportunity to present the defense of discharge, plaintiff cannot now complain of being denied a second opportunity.

## IV.

■ Just as the motion for summary judgment must be granted because plaintiff's claim is precluded by the New York judgment, so must the motion for sanctions on grounds of vexatious litigation be denied. There can be but little doubt that the various litigations in New York and Kentucky demonstrate a pattern of vexatious litigation and that the Kentucky appeal and motion by the child to intervene in the New York action bear the earmarks of litigation tactics designed to harass and delay. As such they would fall within the ambit of Rule 9011 of the Rules of Bankruptcy Procedure, and its counterpart, F.R.C.P. Rule 11, and sanctions should be ordered. It is, however, not at all clear that the instant proceeding falls within that pattern. Rather, it appears to be a legitimate attempt to seek a determination under § 523(a)(5). The plaintiff's current counsel had no responsibility for those litigations. Notwithstanding the plaintiff's failure to find and cite *In re Helm,* and the defendant's failure to find and cite *In re Mattern* and *In re Peterman,* the existence of authority to support plaintiff's claim and the broad language employed in *Brown v. Felsen,* indicate that the issue was fair ground for litigation and thus sanctions would be inappropriate.

Not rebutting this conclusion is the notion that the relief sought in the complaint is sought on the basis of circumstances at the time of the filing of the bankruptcy petition as opposed to when the parties entered into the agreement. In *Long v. Calhoun (In re Calhoun),* 715 F.2d 1103, 1110 n. 11 (6th Cir.1983), the court stated

4. Since the plaintiff does not demand relief as to the two notes that are alleged to be set off against a determination of non-discharged debt, we need not address them. Those notes were before the New York courts and the Kentucky court precluded relitigation of the set-off issue.

In New York a defense of set-off is precluded by a prior judgment except that a claim can be made if the set-off was rejected as not a legally allowable set-off. *Cf.* 9 Carmody Wait 2d § 63:208.

that current circumstances would govern. In our view, the better reasoned cases are those holding to the contrary and which look to the circumstances present at the time of the divorce decree or separation agreement. *See In re Nelson,* 20 B.R. 1008, 1111 (Bankr.M.D.Tenn.1982); *In re Comer,* 27 B.R. 1018, 1020–21 (B.A.P. 9th Cir.1983); *In re Eisenberg,* 18 B.R. 1001, 1003 (Bankr.E.D.N.Y.1982); *Matter of Gentile,* 16 B.R. 381, 383 (Bankr.S.D.Ohio 1982). They properly indicate that it is in light of those circumstances that the intention of the parties with regard to alimony, maintenance and support, as opposed to a property settlement, was formed. Nevertheless, the presence of supporting authority argues strongly against sanctions.

Similar reasoning applies to defendant's assertion that this proceeding was frivolous because the Separation Agreement contains a merger clause precluding proof of a contemporaneous or prior agreement such as plaintiff alleges here. In *In re Bell,* 47 B.R. 284, 287 (Bankr.E.D.N.Y. 1985), the court in *dicta* stated that the parole evidence rule was not applicable to examination of whether an obligation to a spouse, former spouse or child of the debtor is actually in the nature of alimony, or support. We doubt whether Congress, in enabling the bankruptcy courts to look behind separation agreements and divorce decrees, *e.g., Melichar; Migliarese,* intended to do more than permit the use of admissible evidence of intent and circumstances. But, under *Restatement (Second) Contracts,* § 217 (1979), oral testimony can be taken as to whether a contract is integrated regardless of the presence of a merger clause.

There being no evidence of intent to harass or delay, other than in prior litigation, and there being some authority supportive of plaintiff's position, the motion for sanctions is denied.

Judgment is to be entered in favor of defendant with costs. It is

SO ORDERED.