In re Curtis Lee ROSENBAUM, Debtor.

Curtis Lee ROSENBAUM, Appellant,

v.

Pamela Greenwood Rosenbaum
Fulghum CUMMINGS,
Appellee.

No. 91–32163.
Civ. No. 3–92–0627.
Adv. No. 91–3128.

United States District Court,
E.D. Tennessee,
at Knoxville.

Feb. 8, 1993.

Hodges, Doughty ·& Carson, Thomas H. Dickenson, Knoxville, TN, for appellant/debtor.

Layman, O'Connor, Petty & Child, Charles H. Child, Knoxville, TN, for appellee.

## MEMORANDUM OPINION

JARVIS, Chief Judge.

This is an appeal from an order of the bankruptcy court. Jurisdiction over this appeal is based on 28 U.S.C. §§ 158(a) and (d) and is not in dispute. The bankruptcy court held that the debtor was barred by principles of *res judicata* from asserting that certain support obligations are dischargeable in this bankruptcy proceeding. 150 B.R. 990. The findings of fact of the bankruptcy court may only be reversed for clear error. *See* Bankr.R. 8013; *Hardin v. Caldwell (In re Caldwell)*, 851 F.2d 852, 857 (6th Cir.1988). Its conclusions of law are reviewed *de novo*. *See Hardin*, 851 F.2d at 857. For the reasons that follow, the order of the bankruptcy court will be affirmed.

The debtor, Curtis Rosenbaum ("Rosenbaum"), and the appellee, Pamela Cummings ("Cummings"), were married on March 22, 1979 in Roanoke, Virginia. They separated 14 months later on May 21, 1980. After Cummings filed for divorce, the Virginia state court ordered Rosenbaum to pay Cummings "temporary spousal support" of $2,000 per month. This order was dated July 8, 1980.

The parties entered into a separation agreement on May 22, 1981, which adopted the provisions of the temporary spousal support order. The agreement provided that the monthly support payments would continue until either Rosenbaum died or Cummings remarried. The parties were granted a divorce on March 29, 1982. The final decree of divorce was entered on June 10, 1982, and provided for the continuation of temporary spousal support in accordance with the terms of the separation agreement, which was filed and made part of the record by the final decree of divorce. The decree further provided that the temporary spousal support order would remain in effect until further order of the court.

Rosenbaum filed a voluntary Chapter 7 petition in the Bankruptcy Court for the Western District of Virginia on June 9, 1982, one day before the final decree of divorce was entered. On the advice of his bankruptcy attorney, Rosenbaum did not schedule his support obligation to Cummings, notwithstanding the facts that the separation agreement had been in effect for over one year and the temporary spousal support order had been in effect for almost two years. Rosenbaum ultimately received a discharge in his Virginia bankruptcy case. Cummings was later forced to file numerous actions between 1983 and 1989 in the Virginia state courts, seeking to enforce the monthly obligations imposed upon Rosenbaum under the July 8, 1980 support order, the May 22, 1981 separation agreement, and the June 10, 1982 divorce decree.[1] Rosenbaum was represented by counsel in at least four of these proceedings. Cummings remarried in 1989, and

Rosenbaum's obligation to pay spousal support was therefore terminated under the terms of the separation agreement and the divorce decree. Consequently, the debt Rosenbaum seeks to discharge in this bankruptcy action is solely for arrearages, which, at the time of the bankruptcy court's decision, approximated $230,000.

Rosenbaum filed his current Chapter 7 petition in the Bankruptcy Court for the Eastern District of Tennessee on April 24, 1991. He filed an adversary proceeding against Cummings on June 18, 1991, asking the bankruptcy court to determine whether or not his obligations under the separation agreement and the Virginia divorce decree are dischargeable or excepted from discharge pursuant to § 523(a)(5) of the Bankruptcy Code.

Section 523(a)(5) of the Code provides an exception to discharge of unassigned debts owed to a spouse, former spouse, or child of the debtor, which debts are "actually in the nature of alimony, maintenance or support" and arise "in connection with a separation agreement...." What constitutes alimony, maintenance, or support will be determined under the bankruptcy laws, not state law. *See Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1107 (6th Cir. 1983). But the courts often look to state law in determining whether an actual duty of support has been imposed. *Id.*

It is undisputed that Rosenbaum never sought to have the support obligations discharged in the Virginia bankruptcy case; nor did he raise discharge in bankruptcy as an affirmative defense during the state court proceedings brought by Cummings to enforce the support obligations. Rosenbaum thus argues that his failure to raise this point in the Virginia state court proceedings does not preclude consideration of the dischargeability issue by the bankruptcy court. The bankruptcy court rejected Rosenbaum's argument, holding that his failure to raise the dischargeability issue in the Virginia proceedings forever bars him

---

1. The bankruptcy court emphasized that the debt Cummings sought to enforce in the numerous Virginia state court proceedings was in-

curred *before* Rosenbaum filed his first petition for bankruptcy in Virginia.

from asserting that the debt, which was incurred before he filed the Virginia bankruptcy petition, is dischargeable.

■ *Res judicata*, or claim preclusion, bars the re-litigation of issues which are actually litigated or which could have been litigated in a previous lawsuit involving the same parties or their privies. *See Federated Dept. Stores v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). In order for a federal court to give preclusive effect to a state court judgment affecting a federal right, however, the state court must have concurrent jurisdiction over the federal question. *See Allen*, 449 U.S. at 97–98, 101 S.Ct. at 416; *Aurre v. Kalaigan (In re Aurre)*, 60 B.R. 621, 624 (Bankr.S.D.N.Y.1986). Although there has been some confusion on this issue, it is now clear that bankruptcy courts and state courts have concurrent jurisdiction to determine whether a debt is excepted from discharge under § 523(a)(5). *Aurre*, 60 B.R. at 624. In this context, *res judicata* "issues only arise from post-bankruptcy actions to enforce a pre-petition debt." *Id.*[2]

The bankruptcy court in this case relied upon *Aurre* and *Richards v. Richards (In re Richards)*, 131 B.R. 76 (Bankr.S.D.Ohio 1991). These cases clearly held that a debtor is precluded from asserting that obligations owed to an ex-spouse are dischargeable where the obligations are incurred pre-petition, the ex-spouse later brings proceedings in the state courts seeking to enforce the pre-petition debt, and the debtor subsequently seeks to litigate the issue of dischargeability in bankruptcy court.

■ Rosenbaum asserts that the *Richards* case is distinguishable because the debtor there sought a determination "that the obligation [contained in the divorce decree] should be held discharged by his prior bankruptcy discharge." *Id.* at 78. This is a distinction without a difference. The result in *Richards* did not turn on the precise nature of relief sought in the subsequent bankruptcy proceeding. Rather, the debtor's failure to raise the "issue of dischargeability" in the intervening state court action "precluded [him] from contending that the obligation contained in the state court decree is dischargeable in bankruptcy." *Id.* As in this case, the debtor in *Richards* did not schedule his pre-petition debt to his wife. Nor did he assert as a defense in the intervening state court proceeding that he had received a discharge in the previous bankruptcy case. The fact that he *could have* raised the dischargeability issue thus precluded him from receiving a discharge of what appears to have been an otherwise dischargeable debt.

Similarly, the issue in *Aurre* was "whether the debt owed [to the debtor's ex-spouse] was actually [in] the nature of alimony, maintenance or support." 60 B.R. at 624. The facts in *Aurre* are remarkably similar to this case. The debtor was obligated to make certain alimony and support payments to his ex-wife under a separation agreement entered into in 1974. While in arrears in making payments under the separation agreement, the debtor filed a bankruptcy petition in early 1981 and received a discharge later that year. Thereafter, the debtor and his ex-wife were involved in numerous state court proceedings between 1983 and 1985 to determine arrearages and to determine whether the amount of support payments should be modified.

**2.** The confusion regarding concurrent jurisdiction arises from the Supreme Court's decision in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), which held that a state court judgment rendered pursuant to stipulation *prior* to bankruptcy did not bar, under the doctrine of *res judicata*, later inquiry by a bankruptcy court into the underlying facts in an action to declare the debt nondischargeable on grounds of fraud. *Brown*, however, is not applicable to the facts of this case because it addressed amended § 17 of the former Bankruptcy Act, the predecessor to

§ 523 of the Code. The Bankruptcy Code now provides that state courts have concurrent jurisdiction to resolve dischargeability issues under § 523(a)(5). In addition, *Brown* is distinguishable on its facts since the state court proceedings in that case were concluded before a bankruptcy petition was ever filed by the debtor. Thus, Rosenbaum's reliance on *Helm v. Helm (In re Helm)*, 48 B.R. 215 (Bankr.W.D.Ky.1985), which mistakenly read *Felsen* to express a congressional intent that *all* dischargeability actions be heard by the bankruptcy courts, is misplaced.

While appeals were pending in the state court litigation, the debtor obtained an order of the bankruptcy court reopening his bankruptcy case in late 1985. Contrary to Rosenbaum's contention, the debtor in *Aurre* did not seek a determination that his marital debt *had been discharged* in the earlier bankruptcy proceeding. Rather, he sought a determination that his support obligations to his ex-wife were dischargeable. Indeed, the court noted that "the sole relief demanded [was] that judgment be entered declaring the pre-petition debt discharged." *Id.* at 623. The court held that the debtor was precluded from asserting that the obligations owed to his ex-wife were dischargeable at all since he could and should have litigated the dischargeability of the marital debt in the course of the state court proceedings between 1983 and 1985. *Id.* at 628. While the same result is called for here under the reasoning advanced by *Aurre* and *Richards*, it is of greater significance that Rosenbaum could have raised the dischargeability issue in the Virginia bankruptcy case. Indeed, the *Aurre* court recognized that *res judicata* issues come into play in this context only in post-bankruptcy actions to enforce pre-petition debts. Thus, Rosenbaum could have raised the dischargeability issue in the first bankruptcy proceeding, whereupon Cummings would have been notified as a creditor and given the opportunity to contest any discharge of the "support" obligation. His failure to do so then and in the later state court proceedings bars him from litigating that issue now.

Rosenbaum seeks to avoid this result by asserting that the debt arose after the Virginia bankruptcy petition was filed, since the divorce decree did not become a final judgment until the next day. The bankruptcy court rejected this argument and so do I. Rosenbaum knew that the debt had already become a solemn obligation to be incorporated into the final decree by virtue of the separation agreement, which was executed over one year before the final divorce decree was entered. Moreover, the parties had been granted a divorce over two months before the judgment became final. They were, therefore, already divorced before the Virginia bankruptcy petition was ever filed.

Thus, the bankruptcy court correctly held that Rosenbaum is precluded from asserting that the debt is dischargeable at all, not simply that the debt was discharged in his Virginia bankruptcy case.[3] Rosenbaum's debt was incurred before he filed his Virginia bankruptcy case. Therefore, he could have and should have raised the issue of the character of the debt—that is, whether it was in the nature of alimony, maintenance or support and thus not dischargeable, or whether it was a mere property settlement and thus dischargeable. Having failed to do so, any consideration of that issue is barred by the doctrine of *res judicata*.

For the reasons stated above, the judgment of the bankruptcy court will be affirmed.

Order accordingly.

---

**3.** The bankruptcy court noted that the Virginia Rules of Civil Procedure require parties to affirmatively raise the defense of discharge in bankruptcy. *Cf. Richards*, 131 B.R. at 78; *Aurre*, 60 B.R. at 627. In context, the rule appears to require that a defense of discharge be raised to prevent a waiver of the defense. Hence, it is apparently not limited to situations where a litigant actually received a discharge of the particular debt sought to be enforced.